_____

R. ALEXANDER ACOSTA, SECRETARY OF     :
LABOR, UNITED STATES DEPARTMENT OF     :
LABOR,     :
    :
            Plaintiff,     :
    :
          v.     :         No. 5:18-cv-3544
    :
ADAM SCHWAB, JODI SCHWAB,     :
SCHWAB CONTRACTING, INC., and     :
SCHWAB CONTRACTING, INC. SIMPLE     :
IRA PLAN,     :
    :
           Defendants.     :

_____

**O P I N I O N**
**Plaintiff's Motion for Entry of Default Judgment, ECF No. 7—Granted**

**Joseph F. Leeson, Jr.**                                          **December 20, 2019**
**United States District Judge**

## I.     BACKGROUND

The Secretary of Labor of the United States[1] commenced this action against Adam

Schwab, Jodi Schwab, Schwab Contracting, Inc., and Schwab Contracting, Inc. SIMPLE IRA

Plan, to enjoin acts and practices which allegedly violate provisions of the Employment

Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA"), as well as to

obtain restitution resulting from alleged breaches of fiduciary duties thereunder. *See generally*,

Plaintiff's Complaint ("Compl."), ECF No. 1. According to the Secretary, Schwab Contracting,

---

[1]     R. Alexander Acosta served as the Secretary of Labor until July 19, 2019. The current
Secretary of Labor is Eugene Scalia. Plaintiff's motion for default judgment was filed prior to
Secretary Acosta's departure from office, and no formal motion has been made to alter the
caption of this action. The Court refers to the Plaintiff simply as "the Secretary" in this Opinion.

Inc., ("the Company") is a general construction contractor located in Allentown, Pennsylvania, and is principally owned by Adam Schwab, with Jodi Schwab, his wife, serving as payroll officer ("the Schwabs") (collectively, "Defendants"). *See id.* ¶¶ 7-8, 10. The Company is allegedly the Plan Sponsor and Plan Administrator of Schwab Contracting, Inc. SIMPLE IRA Plan ("the Plan"), an employee benefit plan as defined by ERISA. *Id*. ¶ 6. The Secretary contends that in 2015 and 2016, the Plan was unlawfully mismanaged by the Schwabs. Specifically, the Secretary alleges that the Schwabs failed to remit employee contributions to the Plan, remitted certain employee contributions late without interest, and commingled employee contributions with the general assets of the Company. *See id.* ¶¶ 12-13. As a result, the Secretary claims the Plan suffered approximately $18,531.57 in losses from unremitted employee contributions, and approximately $1,706.36 in lost interest. *See id*. ¶ 17.

The Defendants have failed to respond to the Secretary's Complaint, *see* ECF No. 1, or otherwise appear in this action. On December 6, 2018, the Secretary moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a), *see* ECF No. 6, which the Clerk of the Court entered the same day. On March 1, 2019, the Secretary moved for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b). *See generally* Plaintiff's Motion for Entry of Default Judgment, ECF No. 7; *see also* Plaintiff's Memorandum in Support of his Motion ("Pl.'s Mem."), ECF No. 7-1. The Defendants have failed to respond to the Secretary's motion despite proper service.

For the reasons set forth below, the Secretary's Motion for Entry of Default Judgment is granted.

## II.    LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a).  Once the Clerk enters default, if the claim is not for a sum certain as contemplated by Federal Rule of Civil Procedure 55(b)(1), then "the party must apply to the court for a default judgment." FED. R. CIV. P. 55(b)(2); *see, e.g.*, *Phoenix Ins. Co. v. Small*, 307 F.R.D. 426, 433 (E.D. Pa. 2015).  In reviewing a motion for default judgment under Rule 55(b),

> [t]he court's initial inquiry is "whether the unchallenged facts constitute a legitimate cause of action." 10A Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 2688 (3d ed. 2013) (citing cases).  As at the motion to dismiss stage, the court accepts as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), as well as all reasonable inferences that can be drawn from the complaint*, e.g., Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994).  Conclusory allegations and the parties' legal theories or "conclusions of law" are not entitled to the same presumption and are not deemed admitted. Wright & Miller, *supra*, § 2688.

*Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 270-71 (E.D. Pa. 2014) (footnotes omitted).

"If the court determines that the plaintiff has stated a cause of action, it must then assess damages." *Yakubets*, 3 F. Supp. 3d at 271.  To that end, "[t]he court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Spring Valley Produce, Inc. v. Stea Bros.*, No. CIV.A. 15-193, 2015 WL 2365573, at *3 (E.D. Pa. May 18, 2015) (quoting *Star Pacific Corp. v. Star Atlantic Corp.*, 574 F. App'x. 225, 231 (3d Cir. 2014)).  Rule 55(b)(2) provides that the court "may conduct hearings" when it needs to determine the amount of damages; however, "[i]f the court can determine the amount of damages to be awarded based

on affidavits or other evidentiary materials, '[t]he Court is under no requirement to conduct an evidentiary hearing with testimony.'" *Yakubets*, 3 F. Supp. 3d at 271 n.8 (quoting *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 552 (E.D. Pa. 2009)).

In addition to whether a complaint's allegations state a cognizable claim, and, if so, whether damages are ascertainable with "reasonable certainty," *Spring Valley Produce, Inc.*, 2015 WL 2365573, at *3, there are three critical factors a court must consider in resolving a motion for entry of default judgment—factors which recognize that entry of defaults and default judgments are not favored. *See United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984); *see also E. Elec. Corp. of New Jersey*, 652 F. Supp. 2d at 604 ("Generally, the entry of a default judgment is disfavored because it has the effect of preventing a case from being decided on the merits. Thus, because a party is 'not entitled to a default judgment as of right,' the court must use 'sound judicial discretion' in weighing whether or not to enter a default judgment." (quoting *Prudential–LMI Commercial Ins. Co. v. Windmere Corp.,* 1995 WL 422794, at *1 (E.D. Pa. July 14, 1995))). These three factors are "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."[2] *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *cf. Malibu Media, LLC v. Waller*, No. 15-CV-03002, 2016 WL 184422, at *2-*3 (D.N.J. Jan. 15, 2016) (explaining that "[u]nder Fed. R. Civ. P. 55(c), a district court 'may set aside an entry of default for good cause'" only where it considers "(1) 'whether the plaintiff will be prejudiced,' (2) 'whether the defendant has a meritorious defense,' and (3) 'whether the default was the result of the defendant's culpable conduct,'" and observing that

---

[2]    These factors are sometimes referred to as "*Chamberlain* factors," referencing the Third's Circuit's decision in *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000).

"[t]hese are the same three factors that the Third Circuit considers in determining whether to grant default judgment against a defendant" (quoting *Budget Blinds, Inc. v. White*, 536 F.3d 244, 256-57 (3d Cir. 2008) and *Chamberlain*, 210 F.3d at 164)).

## III. ANALYSIS

### A. The Secretary has stated claims for violations of ERISA.

The Secretary's Complaint claims that the Defendants, through their conduct with respect to the Plan, have violated six substantive provisions of ERISA: (1) Section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1), which prohibits the assets of a plan from inuring to the benefit of an employer; (2) Section 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A), which provides that a fiduciary shall discharge his duties for the exclusive purpose of providing benefits to plan participants and their beneficiaries, as well as defraying reasonable expenses of administering the plan; (3) Section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B), which provides that a fiduciary shall discharge his duties with care, skill, prudence, and diligence; (4) Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D), which prohibits a fiduciary from causing a plan to engage in a transaction constituting a direct or indirect transfer to, use by, or for the benefit of, a party of interest, of any asset of the plan; (5) Section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1), which prohibits a fiduciary from dealing with the assets of a plan in his own interest or for his own account; and (6) Section 406(b)(2) of ERISA, 29 U.S.C. § 1106(b)(2), which prohibits a fiduciary from acting in any transaction involving a plan on behalf of a party whose interests are adverse to the interest of the plan or the interest of its participants and beneficiaries. *See* Compl. ¶¶ 19(a)-(f).

### 1.    *Facts alleged in the Complaint*

The Secretary contends the following allegations in the Complaint state claims for violations of each of the above-six provisions of ERISA.

Schwab Contracting, Inc, is a general construction contractor that performed business in the Allentown, Pennsylvania area.  Compl. ¶ 10.  At all relevant times, Adam Schwab was the owner and principle officer of the Company, and his wife, Jodi Schwab, was the Company's payroll officer.  *Id*. ¶¶ 7-8.  The Company allegedly established the Schwab Contracting, Inc. SIMPLE IRA Plan on March 1, 2014, which permitted employee-participants to contribute a portion of their pay to the Plan as elective salary deferrals through payroll deductions.  *Id*. ¶ 11.  The Secretary asserts that Adam and Judy Schwab exercised discretionary authority or control as to the management and administration of the Plan and disposition of the Plan's assets, as well as discretion over how employee contributions were withheld by the Company through weekly payroll deductions.  *Id*. ¶¶ 7-8, 14-15.  The Complaint contends that, as a result, both Adam and Judi Schwab are fiduciaries of the Plan within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21), as well as "parties in interest" within the meaning of Section 3(14)(A), (C), (E), and (F) of ERISA, 29 U.S.C. § 1002(14)(A), (C), (E), and (F).[3]  *Id*. ¶¶ 7-8.

The Secretary asserts that for payroll periods between June 1, 2015 and December 21, 2016, the Company and the Schwabs deducted money from the participants' pay as employee contributions to the Plan.  Compl. ¶ 12.  During this period, the Company and the Schwabs allegedly failed to remit employee contributions to the Plan, remitted certain contributions late without interest, and commingled employee contributions with the general assets of the

---

[3]    Although this contention is legal in nature and therefore need not be accepted as true for purposes of the Secretary's motion, *see Yakubets*, 3 F. Supp. 3d at 271, the Court includes this and other legal contentions here for continuity of the Secretary's allegations.

Company.  *Id.*  Similarly, the Secretary contends that unremitted employee contributions are assets of the Plan within the meaning of ERISA, which assets the Schwabs failed to ensure were collected by the Plan.  *Id.* ¶¶ 13, 14-15.  The Secretary alleges that for the period between June 2015 and December 2016, the Plan suffered approximately $18,531.57 in losses from unremitted employee contributions.  *Id.* ¶ 17.  Moreover, as of May 30, 2018, the Secretary alleges the Plan suffered $1,706.36 in lost interest from unremitted employee contributions.  *Id.*  The Company allegedly ceased operations on December 31, 2016.  *Id.* ¶ 16.

### 2. *Jurisdiction, the Secretary's authority to sue, and other threshold matters*

Before addressing whether the Complaint states causes of action for the six claimed ERISA violations, the Court must address several threshold matters.  First, subject matter jurisdiction properly lies with this Court pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).[4]  Personal jurisdiction is also present, as the Secretary effected proper service of the summons and Complaint on the Defendants.[5]  Additionally, the Court notes that the Secretary has the authority to commence the instant action to enforce provisions of Title I of ERISA pursuant to Sections 502(a)(2) and (5) of ERISA, 29 U.S.C. §§ 1132(a)(2) and (5).[6]

---

[4]  Title 29 U.S.C. § 1132(e)(1) provides, in relevant part, that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary."

[5]  Specifically, on September 12, 2018, copies of the summonses, Complaint, and waivers of service were served by certified mail, return receipt requested, on the individual and entity Defendants.  The receipts were signed by Jodi Schwab on September 14, 2018, and returned to counsel for the Secretary without the signed waivers of service.  *See* ECF No. 4-1.  On November 5, 2018, counsel for the Secretary engaged a process server, Dennis Richman's services, to effected personal service of the summonses and Complaint.  Personal service was effected on November 7, 2018.  *See* ECF No. 4-2.  The Secretary's motion for default judgment and accompanying documents were also served on Defendants.  *See* ECF No. 7-5.

[6]  Title 29 U.S.C. § 1132(a)(2) provides that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section

The Court must make several additional threshold findings before proceeding to an analysis of the alleged ERISA violations.  Specifically, the Court finds that Schwab Contracting, Inc. SIMPLE IRA Plan is, as alleged in the Complaint, properly considered an "employee benefit plan" or "plan" as that term is defined in Section 3(3) of ERISA, 29 U.S.C. § 1002(3).[7] Additionally, the Court finds the Company and the Schwabs to be, as alleged in the Complaint, properly considered both parties in interest and fiduciaries as those terms are defined in Sections 3(14)(A), (C), (E), (F) and (21) of ERISA, 29 U.S.C. §§ 1002(14)(A), (C), (E), (F), and (21).[8]

---

1109 of this title."  Title 29 U.S.C. § 1109 in turn sets forth that liability for breach of fiduciary duties is personal in nature.

Title 29 U.S.C. § 1132(a)(5) provides that a civil action may be brought "except as otherwise provided in subsection (b), by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter."

[7] Title 29 U.S.C. § 1002(3) states that "[t]he term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan."  As is relevant here, "employee pension benefit plan" is in turn defined as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
>> (i) provides retirement income to employees, or
>>
>> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

29 U.S.C. § 1002(2)(A).

[8] Title 29 U.S.C. § 1002(14) defines "party in interest" with respect to an employee benefit plan as follows:  "(A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;" "(C) an employer any of whose employees are covered by such plan;" "(E) an owner, direct or indirect, of 50 percent or more" of (i) the combined voting power of all classes of stock, (ii) the capital interest or profits interest of a partnership, or (iii) the beneficial interest of a trust or unincorporated enterprise, which is also an employer; or "(F) a relative" of a fiduciary, employer, or direct or indirect owner, which is defined to include a spouse.

Title 29 U.S.C. § 1002(21)(A) defines a "fiduciary" as follows:

### 3.	*Individual alleged ERISA violations*

The Court next turns to addressing whether the facts alleged in the Complaint are sufficient to state claims for the six ERISA violations alleged.  Unfortunately, this is made difficult by the fact that the Secretary has failed to provide *any* case citations to support his contention that the six alleged ERISA violations have been sufficiently pleaded.  *See* Pl.'s Mem. at 5-7.  This failure has moved the Secretary's burden onto the Court.  However, in light of the public policy behind ERISA and the significant interests at play here, *see Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 66*, 580 F.3d 185, 193 (3d Cir. 2009) (explaining that through ERISA, "Congress wanted to guarantee that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it"), the Court proceeds to address the individual alleged violations, based primarily on its own independent research.

---

Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

*See Srein v. Frankford Tr. Co.*, 323 F.3d 214, 220-21 (3d Cir. 2003) ("Fiduciary status attaches to a person managing an ERISA plan under subsection (i) of § 1002(21)(A) if that person exercises discretion in the management of the plan, *or* if the person exercises any authority or control over the management or disposition of the plan's assets.") (emphasis in original).

Additionally, "person" is defined as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."  29 U.S.C. § 1002(9).

The first cause of action is for the Defendants' alleged violation of Section 403(c)(1) of

ERISA, 29 U.S.C. § 1103(c)(1).  That provision mandates, with limited exceptions, that "the

assets of a plan shall never inure to the benefit of any employer and shall be held for the

exclusive purposes of providing benefits to participants in the plan and their beneficiaries and

defraying reasonable expenses of administering the plan."  As the Supreme Court has explained,

"[t]he purpose of the anti-inurement provision, in common with ERISA's other fiduciary

responsibility provisions, is to apply the law of trusts to discourage abuses such as self-dealing,

imprudent investment, and misappropriation of plan assets, by employers and others."  *Raymond*

*B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 23 (2004).

The Court has found scant caselaw discussing the precise elements of a *prima facie* claim

of violation of ERISA's anti-inurement provision.  Indeed, it has found no binding precedent

from this Circuit.  Making this absence of guiding case law more difficult is the fact that the

Secretary's allegations border on conclusory.  They can be boiled down to the following:

between June 1, 2015 and December 21, 2016, the Defendants failed to remit employee

contributions to the Plan, remitted certain contributions late without interest, and commingled

employee contributions with the general assets of the Company, resulting in the Plan suffering

losses.  *See* Compl. ¶¶ 13, 16-17.  Notably, there are no specific allegations as to what the

Defendants used the unremitted funds for.  Such conclusory assertions have been found

insufficient to state a claim for violation of the anti-inurement provision by other courts.  *See,*

*e.g., Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1505 (10th Cir. 1995) (upholding

the district court's finding that the allegation that defendants "used surplus assets of the Pension

Plan in a manner which inured to the benefit of the Plaintiffs' employer, [ ] and [ ] and failed to

hold the Pension Plan assets for the exclusive purposes of providing benefits to participants in

the Pension Plan and their beneficiaries" was inherently conclusory and could not state a claim

for violation of the anti-inurement provision);[9] *LaLonde v. Textron, Inc.*, 369 F.3d 1, 7 (1st Cir.

2004) (upholding the district court's dismissal of an anti-inurement violation claim where

appellants made "no effort at all to explain how the scheme alleged caused plan assets to inure to

the benefit of [the plan sponsor] itself").

However, the Court recognizes that notwithstanding the lack of specific factual

assertions, where Plan assets have been commingled with Company funds, the Company ceases

operation, and the Plan suffers a significant loss—the alleged circumstances here—it cannot be

said that the Plan assets have been held "for the *exclusive* purposes of providing benefits to

participants in the Plan." 29 U.S.C. § 1103(c)(1) (emphasis added). *See, e.g.*, *Chao v. Stuart*,

No. CIV.H-04-1115, 2005 WL 1693939, at *7 (S.D. Tex. July 20, 2005) (explaining that with

respect to the duty of Section 1103(c)(1) to hold plan assets for "the exclusive purposes of

providing benefits to partisans in the plan and their beneficiaries," where "a fiduciary breaches

this duty and allows plan assets to commingle with other corporate assets, then he will be held

liable"). Moreover, as at least one court has observed, the "intentionally one-sided purpose of

protecting employees and protecting the financial integrity of pension plans suggests that the

general command of 29 U.S.C. § 1103(c)(1) must be read liberally." *Soft Drink Indus. Local*

---

[9]     The Tenth Circuit went on to explain that "[a]n alleged violation of section 403(c) might, for example, involve a reversion of surplus assets to an employer at a plan's termination pursuant to a plan provision. In the present case, no such reversion, diversion, or any other sort of payment of surplus assets to [defendants] is alleged." *Id*. at 1506 (internal citations omitted).

*Union No. 744 Pension Fund v. Coca-Cola Bottling Co. of Chicago*, 679 F. Supp. 743, 747

(N.D. Ill. 1988) (footnote omitted).

Taking these considerations into account, the Court finds that despite its barren nature, the Secretary's Complaint has stated a claim for violation of ERISA's anti-inurement provision against the Defendants.

**b.      Sections 404(a)(1)(A) and (B) of ERISA, 29 U.S.C. §§ 1104(a)(1)(A) and (B)**

Next, the Secretary contends that the Defendants violated Sections 404(a)(1)(A) and (B) of ERISA, 29 U.S.C. §§ 1104(a)(1)(A) and (B), which provide that

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A) for the exclusive purpose of:
>
> > (i) providing benefits to participants and their beneficiaries; and
> >
> > (ii) defraying reasonable expenses of administering the plan; [and]
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.[10]

Where, as here, the Complaint alleges that while the Schwabs were acting as fiduciaries the Plan suffered a significant loss, and where, as here, it is alleged that the loss was the result of the Schwabs' unlawful commingling of funds, it seems the Schwabs necessarily cannot be considered to have acted with "the care, skill, and diligence" of prudent people.  Similarly, these allegations, accepted as true, necessitate a finding that the Schwabs failed to act "for the

---

[10]      These provisions of ERISA are codifications of traditional common law duties of fiduciaries.  *See Reich v. Compton*, 57 F.3d 270, 290 (3d Cir. 1995), *amended* (Sept. 8, 1995).

*exclusive* purpose of" providing benefits to Plan participants. Indeed, through their conduct, Plan benefits have been lost or foreclosed to participants. *See Perez v. Kwasny*, No. CV 14-4286, 2016 WL 558721, at *2 (E.D. Pa. Feb. 9, 2016) (finding the Secretary stated claims for violations of, *inter alia*, 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D), where defendant commingled plan and employer-company funds and used plan funds to pay company expenses, and granting default judgment accordingly), *judgment entered*, No. CV 14-4286, 2016 WL 521318 (E.D. Pa. Feb. 9, 2016); *Perez v. Railpower Hybrid Techs. Corp.*, No. 2:13-CV-134, 2013 WL 6048984, at *2 (W.D. Pa. Nov. 15, 2013) (finding the Secretary stated claims for violations of 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D), where a plan administrator had ceased operations, leaving an "orphaned" plan, to the detriment of plan participants, and concluding that "[t]he uncontroverted facts in the Complaint establish that [defendant] was the Plan's fiduciary and failed to meet the duties imposed by the Act"); *see also Reich v. Compton*, 57 F.3d 270, 291 (3d Cir. 1995) ("We agree with the Second Circuit that trustees violate their duty of loyalty when they act in the interests of the plan sponsor, rather than with an eye single to the interests of the participants and beneficiaries of the plan.") (quotation marks omitted), *amended* (Sept. 8, 1995).

Therefore, the Court finds that the allegations in the Secretary's Complaint state claims for violations of Sections 404(a)(1)(A) and (B) of ERISA, 29 U.S.C. §§ 1104(a)(1)(A) and (B).

### c.  Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D)

The Secretary next alleges the Defendants violated Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D), which prohibits a fiduciary from causing a plan to engage in a transaction "if he knows or should know that such transaction constitutes a direct or indirect . . . (D) transfer to, or use by, or for the benefit of a party in interest, of any assets of the plan." As the Third Circuit has construed it, 29 U.S.C. § 1106(a)(1)(D)

provides that a fiduciary breach occurs when the following five elements are satisfied: (1) the person or entity is "[a] fiduciary with respect to [the] plan"; (2) the fiduciary "cause[s]" the plan to engage in the transaction at issue; (3) the transaction "use[s]" plan assets; (4) the transaction's use of the assets is "for the benefit of" a party in interest; and (5) the fiduciary "knows or should know" that elements three and four are satisfied.

*Reich*, 57 F.3d at 278 (quoting 29 U.S.C. § 1106(a)(1)(D)).  The Third Circuit has held that with respect to these elements, element four requires a fiduciary to have a "subjective intent" to benefit a party in intertest.  *Reich*, 57 F.3d at 279-80.  On the other hand, element five requires that "the fiduciary in question either knew or reasonably should have known that the transaction constituted the use of plan assets 'for the benefit' of a party in interest," and thus "does not require proof of the fiduciary's subjective intent."  *Id*. at 280.

Here, the prohibited "transaction" is the commingling of Plan assets with Company funds.  The Court finds that the Secretary's allegations satisfy the five elements of a claim of violation of 29 U.S.C. § 1106(a)(1)(D) with respect to this transaction:  (1) the Complaint pleads, and the Court has found, that the Schwabs are fiduciaries of the Plan; (2) the Schwabs are alleged to have had discretionary control and management of the administration of the Plan, from which the Court can draw a plausible inference that they were able to, and did, "cause" the Plan's assets to be commingled with Company funds; (3) this commingling necessarily involves the use of Plan assets; (4) the use of Plan assets was for the benefit of the Company and/or the Schwabs, the Schwabs' subjective intent for which can be supported again by a plausible inference; and (5) based on their role as managers of the Plan's administration, the Schwabs knew or should have known that they were commingling Plan assets with general Company funds.  *See, e.g.*, *Pender v. Bank of Am. Corp.*, 756 F. Supp. 2d 694, 705 (W.D.N.C. 2010) ("[Bank of America] commingled the 401(k) assets with the [ ] Plan assets and then invested those assets with the hope of offsetting the Bank's obligation to fund the [ ] Plan.  In turn, when the 401(k) assets

were transferred and commingled, 401(k) Plan participants lost their separate account protections. The Plan fiduciaries thus allowed 401(k) Plan assets to be used for the Bank's benefit and the expense of the 401(k) participants.") *aff'd sub nom. McCorkle v. Bank of Am. Corp.*, 688 F.3d 164 (4th Cir. 2012).

The Secretary has therefore stated a claim with respect to the Complaint's fourth cause of action.

### d.  Sections 406(b)(1) and (2) of ERISA, 29 U.S.C. §§ 1106(b)(1) and (2)

The Secretary's fifth and sixth causes of action assert that the Defendants violated Sections 406(b)(1) and (2) of ERISA, 29 U.S.C. §§ 1106(b)(1) and (2), respectively. These provisions prohibit fiduciaries from (1) dealing with the assets of a plan in his or her own interest or for his or her own account, and (2) acting in his or her individual or any other capacity in any transaction involving the plan on behalf of a party those interests are adverse to the interests of the plan.

Here, the allegations that have established the ERISA violations discussed above also establish violations of Sections 1106(b)(1) and (2). Accepting the Secretary's allegations as true and drawing all plausible inferences in the Secretary's favor, the Court finds that while acting as fiduciaries, the Schwabs (1) dealt with the Plan's assets in their own and the Company's interest—a company which they owned and managed—by commingling Plan assets with Company funds, and (2) acted—indeed, they were the lead and likely only actors—in a transaction (again, commingling of funds) involving the Plan, on behalf of a party whose interests are adverse to the interests of the Plan (the Company and/or themselves individually). *See Prof'l Helicopter Pilots Ass'n v. Denison*, 804 F. Supp. 1447, 1452 (M.D. Ala. 1992) (explaining that in drafting 29 U.S.C.A. § 1106(b)'s fiduciary standards, "Congress invoked the

common law of trust and traditional trust principles," and "[o]ne of the fundamental principles of trust law is that a fiduciary has the duty to separate strictly trust property from his own property and to avoid commingling of funds"); *cf. Cutaiar v. Marshall*, 590 F.2d 523, 529 (3d Cir. 1979) (endorsing "without reservation the interpretation of the Secretary" that "[w]hen identical trustees of two employee benefit plans whose participants and beneficiaries are not identical effect a loan between the plans . . . a per se violation of [Section 1106(b)(2)] exists").

The Secretary has therefore stated a claim with respect to the Complaint's fifth and sixth causes of action.

### B. The Secretary is entitled to entry of a default judgment.

As previously noted, where a plaintiff has stated a claim for relief, three factors guide whether an entry of default judgment is warranted: (1) whether the plaintiff will be prejudiced if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $ 55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)). Application of these factors supports an entry of default judgment here.

First, denying the motion would prejudice the Secretary greatly since the Secretary has been deprived of its ability to litigate the ERISA violations against the Defendants. *See Perez v. Kwasny*, No. CV 14-4286, 2016 WL 558721, at *2 (E.D. Pa. Feb. 9, 2016). What's more, the prejudice to the Secretary is, in reality, prejudice to the Plan participants who have been deprived of their contributions by the Defendants' breach of their fiduciary duties.

Second, considering they have not responded in this matter, the "Defendant[s] ha[ve] put forth no evidence or facts containing any information that could provide the basis for a meritorious defense." *Bd. of Trustees, Local 888 Pension Fund v. Fixture Hardware Mfg. Corp.*,

No. CV 16-8629, 2017 WL 3622029, at *5 (D.N.J. Aug. 22, 2017) (quoting *HICA Educ. Loan Corp. v. Surikov*, No. CIV.A. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015)). "Additionally, there is nothing on the face of the Complaint indicating that a meritorious defense is available." *Fixture Hardware Mfg. Corp.*, 2017 WL 3622029, at *5. Moreover, the Court may presume that an absent defendant who has failed to answer has no meritorious defense, *see, e.g., Doe v. Simone*, No. 12–5825, 2013 WL 3772532, at *5 (D.N.J. July 17, 2013), because "[i]t is not the court's responsibility to research the law and construct the parties' arguments for them." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271-72 (E.D. Pa. 2014) (quoting *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008)).

Third, the Defendants' failure or refusal to "engage[ ] in the litigation process and [to] offer[ ] no reason for this failure or refusal" may "qualif[y] as culpable conduct with respect to the entry of a default judgment." *Yakubets*, 3 F. Supp. 3d at 272 (citing *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009)); *Perez v. Am. Health Care, Inc. 401(k) Plan*, No. CIV. 2:15-0377, 2015 WL 5682446, at *1 (D.N.J. Sept. 25, 2015) ("[W]here a defendant has failed to answer, move, or otherwise respond, the defendant is presumed culpable.").

Therefore, the Secretary is entitled to an entry of default judgment against the Defendants. The Court must next determine the appropriate relief to be awarded.

**C.      The Secretary is entitled to the relief sought, in part.**

Pursuant to entry of a default judgment, the Secretary seeks (1) the removal of the Defendants as fiduciaries to the Plan; (2) that Defendants restore to the Plan all losses, including interest or lost opportunity costs; (3) an Order directing Defendants and their agents, employees,

service providers, banks, accountants, and attorneys to provide the Secretary with all books, documents, and records relating to the finances and administration of the Plan, and to make an accounting to the Secretary of all contributions to the Plan, including transfers payments, or expenses incurred or paid in connection with the Plan; and (4) an Order barring Defendants from engaging in any future violations of ERISA and from serving as fiduciaries in the future. *See* Pl.'s Mem. at 7-9.

The Court first addresses the Secretary's request for removal of the current fiduciaries to the Plan. Pursuant to 29 U.S.C. § 1109(a), any fiduciary found to have breached his or her duties "shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." Based on the finding that the Defendants have violated their fiduciary duties and six of ERISA's provisions, the Court finds their removal as fiduciaries to the Plan to be appropriate.

Turning to the Secretary's request for restitution of all Plan losses, such relief is also contemplated by 29 U.S.C. § 1109(a), which provides that any fiduciary who breaches his or her duties with respect to a plan "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." Indeed, pursuant to this provision, "[t]he Court *must* require a breaching fiduciary to restore a plan to the position it would have been in but for that fiduciary's illegal conduct." *Kwasny*, 2016 WL 558721, at *3 (emphasis added). The next step then is determining the appropriate amount of restitution.

The Secretary's memorandum includes a declaration of Felicia A. Lige, an investigator with the Philadelphia Regional Office of the Employee Benefits Security Administration of the U.S. Department of Labor. *See* Lige Decl., ECF No. 7-2. In this declaration, Ms. Lige outlines

her investigation of the Defendants and her calculation of Plan losses. Ms. Lige states that from (1) employee contributions for thirteen Company employees and (2) interest on those contributions using the Internal Revenue Code underpayment interest rate set forth in 26 U.S.C. §§ 6621 and 6622 for the relevant time period, total contributions unremitted to the Plan were $18,531.57, with interest on those unremitted contributions totaling $2,552.43, through March 1, 2019, for a total unremitted amount of $21,084.00 as of March 1, 2019. *See* Lige Decl. ¶¶ 2(i)-(k). Ms. Lige states that the below chart represents her findings for each of the thirteen Plan participants:

| Name | EE Contributions | Interest | Total Owed to EE |
|---|---|---|---|
| A. Boyle | $17.94 | $2.47 | $20.41 |
| D. Mason | $1,077.70 | $148.44 | $1,226.14 |
| D. Rodriguez | $1,461.52 | $201.30 | $1,662.82 |
| D. Dentith | $1,370.55 | $188.77 | $1,559.32 |
| G. Zettlemoyer | $35.33 | $4.87 | $40.20 |
| J.Kline | $1,534.15 | $211.30 | $1,745.45 |
| J. Colon | $430.70 | $59.32 | $490.02 |
| Ma. Schwab | $885.00 | $121.89 | $1,006.89 |
| Mo. Schwab | $317.00 | $43.66 | $360.66 |
| N.Gross | $7,917.23 | $1,090.47 | $9,007.70 |
| R. Schwab | $1,299.94 | $179.05 | $1,478.99 |
| R. McHugh | $366.20 | $50.44 | $416.64 |
| W. Colon | $1,818.31 | $250.44 | $2,068.75 |
| **Totals** | **$18,531.57** | **$2,552.43** | **$21,084.00** |

The Court credits Ms. Lige's findings and determines that through them, the Secretary has established the amount of Defendants' restitution with "reasonable certainty." *United States v. Parente*, No. CV 3:19-1086, 2019 WL 4962976, at *4 (M.D. Pa. Oct. 8, 2019) ("The Court must 'conduct an inquiry to ascertain the amount of damages with reasonable certainty.'"

(quoting *Spring Valley Produce, Inc. v. Stea Bros.*, 2015 WL 2365573, at *3 (E.D. Pa. May 18, 2015))).  The Court will therefore order restitution pursuant to the Secretary's motion.

The remainder of the relief sought—an order directing Defendants and their agents, etc., to provide the Secretary with all relevant books and documents, along with an accounting of all Plan finances; an order barring Defendants from engaging in future ERISA violations; and, more comprehensively, an order barring Defendants from serving as fiduciaries in the future—is equitable in nature.  "A federal court enforcing fiduciary obligations under ERISA is [ ] given broad equitable powers to implement its remedial decrees."  *Kwasny*, 2016 WL 558721, at *3 (quoting *Delgrosso v. Spang & Co.*, 769 F.2d 928, 937 (3d Cir. 1985)).  The Court finds only part of this equitable relief to be appropriate under the circumstances of this case.

Undoubtedly, the Defendants' violation of ERISA and their duties as fiduciaries warrants an order directing their cooperation with the Secretary in assuring Plan participants are made whole and barring future ERISA violations.  However, the Court finds the Secretary's showing in support of a permanent injunction from future fiduciary duties to be insufficient.  *See* Pl.'s Mem. at 9.  None of the legal authorities cited[11] are controlling, nor were any of these decisions issued pursuant to a default judgment as in the instant case.  Moreover, each appears to have involved blatant, especially egregious self-dealing, as well as losses of significantly higher amounts than are involved here.  *See, e.g.*, *Beck v. Levering*, 947 F.2d 639, 641 (2d Cir. 1991); *Reich v. Lancaster*, 55 F.3d 1034, 1040-41 (5th Cir. 1995).  The Secretary has failed to demonstrate how these decisions support a permanent injunction in light of the facts of this

---

[11]     The Court was unable to locate the third of the three decisions cited by the Secretary— *Brock v. Ardito*.  However, if it truly is a 1987 decision from the U.S. District Court for the Eastern District of New York, as it appears to be in the Secretary's memorandum, the decision is neither controlling nor likely to be persuasive.

case.[12]  That is not to say that the Schwabs should or will serve in a future fiduciary capacity; it is only to say that the Secretary has failed to meet his burden. [13]

Lastly, the Court finds that the Secretary is entitled to an award of costs for prevailing in this action.  *See Chao v. Pinder*, No. CIV.A.01-007, 2002 WL 169264, at *3 (D. Del. Jan. 31, 2002) ("The court finds that the Secretary's request for costs is reasonable . . . . ERISA authorizes costs to be awarded against the defendant in any action on behalf of a plan to enforce a delinquent employee benefit plan payment."[14] (citing 29 U.S.C. § 1132(g)(2)(D))).

**D.      The Defendants are jointly and severally liable.**

As a final matter, the Court briefly addresses the nature of the liability in this case between the co-Defendants.  The Secretary contends that each Defendant is liable for the claimed ERISA violations as a co-fiduciary.  *See* Pl.'s Mem. at 7.  ERISA Section 405(a), 29 U.S.C. § 1105(a), provides as follows:

> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
>> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

---

[12]      That the Complaint's allegations border on conclusory, as noted previously, further hinders the Secretary's ability to satisfy his burden in this regard.

[13]      While in *Perez v. Kwasny*, No. CV 14-4286, 2016 WL 558721 (E.D. Pa. Feb. 9, 2016), a decision cited several times in this Opinion, the district court did order a permanent injunction, in doing so it cited only the same two non-controlling decisions as appear in the Secretary's memorandum.  *See id.* at *4.  Moreover, in an additional Eastern District of Pennsylvania decision where the district court issued a permanent injunction, *Perez v. Koresko*, the circumstances were quite different from those here.  *See Perez v. Koresko*, 86 F. Supp. 3d 293, 392 (E.D. Pa. 2015), *judgment entered*, No. CIV.A. 09-988, 2015 WL 1182846 (E.D. Pa. Mar. 13, 2015), *amended*, No. CIV.A. 09-988, 2015 WL 2236692 (E.D. Pa. May 13, 2015), and *aff'd sub nom. Sec'y U.S. Dep't of Labor v. Koresko*, 646 F. App'x 230 (3d Cir. 2016).

[14]      "Moreover, the Secretary would be entitled to costs even without leave of court under Federal Rule of Civil Procedure 55(b)(1)." *Id.*

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach

The Court finds that based on the Secretary's allegations—which, taken as true, establish violations of six provisions of ERISA—the Schwabs are liable as co-fiduciaries under 29 U.S.C. § 1105(a)(1)-(3). Given the nature of their relationship as husband and wife and as manager and payroll officer of the Company, it is probable that Adam and Jodi Schwab (1) each knowingly participated in and undertook to conceal the acts or omissions of the other with respect to the commingling of Plan assets; (2) through this participation in or concealment of the commingling of funds, each enabled the other to further the breach of the fiduciary duty; and (3) each failed to make reasonable efforts to remedy the ongoing breach. The Company, as Plan Administrator, which was controlled and managed by the Schwabs, is similarly liable as a co-fiduciary. *See* 29 U.S.C. §§ 1002(9), (21)(A). As a result, Adam Schwab, Jodi Schwab, and the Company are jointly and severally liable in this action.[15] *See Sec'y United States Dep't of Labor v. Kwasny*, 853 F.3d 87, 91-92 (3d Cir. 2017) ("The Plan's trustees are jointly and severally liable for money that is withheld but misdirected from a plan."); *Trustees of the Nat'l*

---

[15] With respect to the final Defendant in this action—the Plan—the Court notes that while it is a proper defendant, *see Evans v. Employee Benefit Plan, Camp Dresser & McKee, Inc.*, 311 F. App'x 556, 558 (3d Cir. 2009) ("In a claim for wrongful denial of benefits under ERISA, the proper defendant is the plan itself or a person who controls the administration of benefits under the plan." (citing 29 U.S.C. § 1132(a)(1)(B))), the Plan "cannot be liable as a fiduciary under ERISA § 409(a), 29 U.S.C. § 1109(a), since it is not an individual, corporation, or other association." *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 199 (3d Cir. 2006); *see* 29 U.S.C. § 1132(a)(2) (providing that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title"); *see also* 29 U.S.C. § 1109(a) (setting forth that liability for breach of fiduciary duties is personal in nature).

*Elevator Indus. Pension v. GMS Elevator Servs., Inc.*, No. CV 18-00538, 2018 WL 4510495, at *6 (E.D. Pa. Sept. 20, 2018) ("[B]ecause Plaintiffs have alleged that Gordon and Pamela Simpkins failed to timely report and make contributions, they have breached their fiduciary duties. Therefore, both Gordon and Pamela Simpkins are jointly and severally liable for the damages.").

## IV.     CONCLUSION

For the foregoing reasons, the Court grants the Secretary's motion for entry of default judgment against the Defendants, and awards, in part, the relief sought. An appropriate Order follows this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Court